IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RANDOLFO RIVERA SANFELIZ,

    Plaintiff,

    v.

THE CHASE MANHATTAN BANK,
et al.,

    Defendants.

CIVIL NO. 00-1485 (RLA)

## ORDER DENYING MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF'S STOCK AND STOCK OPTION CLAIM

Defendants The Chase Manhattan Bank, successor to The Chase Manhattan Bank, N.A., and The Chase Manhattan Corporation ("Chase Corp."), collectively referred to as ("Chase") have moved the court to enter summary judgment dismissing plaintiff's stock option claim.

Part of the claims asserted in this case include a cause of action for specific performance or damages for breach of contract pertaining to certain stock and stock options grants awarded to plaintiff  under Chase's 1996 Long-Term Incentive Plan ("the Plan").[1]

As grounds for its motion, Chase essentially argues that plaintiff: (1) forfeited his right to stocks under the Plan, by voluntarily resigning from his employment with Chase; (2) was forewarned that by rejecting employment with Chase's successor he would be regarded as having voluntarily resigned and thereby waived

---

[1] Third Amended Complaint (docket No. 4) Third Cause of Action.

CIVIL NO. 00-1485 (RLA)                                    **Page 2**

his right to stock under the Plan; and (3) is not entitled to remedies under Puerto Rico law because New York law governs any claims arising under the Plan.

Along with his opposition, plaintiff also moved for summary judgment in his favor claiming his entitlement to the stock and stock option awards and contesting the interpretation given by Chase to the terms of the Plan and related documents to the effect that his termination was "voluntary".

### THE FACTS

Plaintiff, Randolfo Rivera Sanfeliz, was employed by Chase in one of its Puerto Rico dependencies from February 25, 1974 until June 1, 1998.

On April 21, 1998, Chase Bank informed Rivera that it would sell its assets and operations in Puerto Rico to Banco Bilbao Vizcaya ("BBV") the going concern would not cease operating, and BBV would offer employment to some of Chase Bank's employees.

On April 21, 1998 plaintiff was advised that he had been designated as eligible for a special bonus program established to assist in the sale transition process and which provided incentives to certain individuals who remained with Chase or BBV after the sale had finalized.

On April 21, 1998 BBV offered Rivera employment which guaranteed his same salary, a performance bonus, Christmas bonus, and other benefits. The job proposal included a Project Completion Bonus of

CIVIL NO. 00-1485 (RLA)                                    **Page 3**

---

$139,000.00, equivalent to a one-year salary, provided, *inter alios*, that plaintiff continued working for BBV for at least 90 days subsequent to the closing date.

Chase advised plaintiff that if he chose not to accept employment with BBV, it would be deemed that he voluntarily resigned his employment and would consequently forfeit his right to exercise the stocks and stock option grants issued to him under the Plan.

Plaintiff declined BBV's employment offer. Rather, he sought and obtained employment with FirstBank Puerto Rico instead.

On June 1, 1998, plaintiff submitted his resignation letter effective that same day.

Chase ceased its operations in Puerto Rico on October 1, 1998.

Thereafter, plaintiff requested to exercise the stock and stock option grants awarded to him on January 2, 1997 and January 20, 1998.

On August 26, 1999 plaintiff's request was denied because he had been offered and had declined continued employment with BBV and had thereafter voluntarily resigned - thus forfeiting the opportunity to exercise any stock under the Plan.

**THE PLAN**

Effective May 21, 1996, Chase adopted its 1996 Long-Term Incentive Plan which allowed for the granting of various types of stock and stock options awards for selected key employees, including plaintiff.

CIVIL NO. 00-1485 (RLA)                                                    **Page 4**

---

The Plan was created for the purpose of "encourag[ing] selected key employees... to acquire a proprietary and vested interest in the growth and performance of the Company, to generate an increased incentive to contribute to the Company's future success and prosperity and to attract talented individuals."

The Plan was filed with the Securities and Exchange Commission and is not subject to any provisions of the Employee Retirement Income Security Act ("ERISA").

Pursuant to the Plan, on January 21, 1997, plaintiff was granted a Non-Qualified Stock Option Award Agreement ("1997 Award Agreement")[2] and on January 20, 1998, with a Restricted Stock Award Agreement ("1998 Award Agreement").[3] Each of these two awards was accompanied by a document which described its particular terms and conditions which, together with the 1996 Long-Term Incentive Plan, provided the

---

[2]  On January 21, 1997, plaintiff was granted an award of 1,000 shares of common stock to vest and become exercisable in accordance with the following schedule: (1) 333 shares on January 21, 1998, (2) 333 shares on January 21, 1999, and (3) 334 shares on January 21, 2000. Pursuant to the vesting schedule of the aforementioned Non-Qualified Stock Option Award Agreement, on June 1, 1999, the date of Rivera's resignation, there were 333 shares of exercisable vested stock in plaintiff's favor.

[3]  On January 20, 1998, plaintiff was granted a total of 274 shares of restricted stock, to vest in accordance with the following schedule: (1) 68 shares on January 25, 1999, (2) 68 shares on January 25, 2000, (3) 69 shares on January 25, 2001, and (4) 69 shares on January 25, 2002. Pursuant to the vesting schedule of the Restricted Stock Award Agreement of 1998, at the time of plaintiff's resignation on June 1, 1999, there were no exercisable vested stocks in plaintiff's favor.

pertinent rules for the implementation and exercise of stock awarded under the Plan.

### APPLICABLE LAW

Both the 1997 and 1998 Terms and Conditions contain an identical choice-of-law clause providing that New York law would govern any claim arising thereunder.[4] Plaintiff has not challenged this contract provision. Hence, we conclude that plaintiff may not assert claims related to the aforementioned stock option and stock option grants based on Puerto Rico legal provisions, i.e., breach of contract pursuant to art. 1054 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 3018[5] (1990); specific performance, arts. 1049-1051 and 1077 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 3013-3015 and 3052;[6] lost profits;[7] or resolution of the contract with alternative economic damages[8] as well as pain and suffering.[9]

Rather, we shall examine the validity of plaintiff's claims under the pertinent New York legal principles.

---

[4]   Section 6 of the 1997 Terms and Conditions and Section 5 of the 1998 Terms and Conditions provide that the Agreements as well as the Terms and Conditions "shall be governed by the laws of the State of New York."

[5]   Third Amended Complaint ¶ 36.

[6]   Third Amended Complaint ¶ 37.

[7]   Third Amended Complaint ¶ 38.

[8]   Third Amended Complaint ¶ 39.

[9]   Third Amended Complaint ¶ 39.

CIVIL NO. 00-1485 (RLA)                                          Page 6

## STOCK OPTIONS

Stock options have been described as follows:

> Stock options are a form of bonus or incentive compensation. A stock option is the right to buy shares of stock at a specified price within a specified period of time. The option price typically is set at the time of the grant and does not change over the option period. ... The exercise of the stock options often gives the optionee the privilege of obtaining shares on a large scale at less than the market price, amounting to a lucrative bonus.

5A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 2137.30 (footnotes omitted).

Payment of a bonus will be determined in accordance with the terms of the plan bestowing payment thereof. Thompson v. Saatchi & Saatchi Holdings (USA), Inc., 958 F.Supp. 808, 825 (W.D.N.Y. 1997); Markby v. PaineWebber Inc., 650 N.Y.S.2d 950 (1996); Weiner v. Diebold Gp., Inc., 568 N.Y.S.2d 959, 960 (1991). "An employee's entitlement to a bonus is governed by the terms of the employer's bonus plan." Hall v. United Parcel Serv. of Am., Inc., 556 N.Y.S.2d 21, 27 (1990).

Contrary to earned compensation, payment of a bonus which falls within the discretion of the employer is subject to forfeiture. Thompson, 958 F.Supp. at 825; Weiner, 568 N.Y.S.2d at 961. *See also*, Int'l Bus. Mach. Corp. v. Martson, 37 F.Supp.2d 613, 617 (S.D.N.Y.

1999) (forfeited stock options not deemed earned compensation); Markby, 650 N.Y.S.2d at 954 ("New York State courts recognize a long standing policy against the forfeiture of earned but undistributed wages.").

"'Though the law does not favor forfeiture, courts will enforce it if the parties agreed to it.'" Kreiss v. McCown De Leeuw & Co., 131 F.Supp.2d 428, 436 (S.D.N.Y. 2001) (citing 220 West 42 Assoc. v. Ronbet Newmark Co., 375 N.Y.S.2d 255 (1975)).

### ARBITRARY AND CAPRICIOUS STANDARD

Pursuant to New York legal principles, denial of stock option benefits will be reviewed under an arbitrary and capricious standard if the person or persons responsible for making the determination are given full authority thereof under the terms of the applicable plan.

> Under New York law, if an employee is part of a "plan" that gives a "committee" sole discretion to interpret the plan and determine whether the employee is entitled to benefits under the plan, a court can review such determinations to see whether they were made fraudulently, in bad faith, or arbitrarily.

Lucente v. Int'l Bus. Mach. Corp., 262 F.Supp.2d 109, 114 (S.D.N.Y. 2003); Onanuga v. Pfizer, Inc., 369 F.Supp.2d 491, 497 (S.D.N.Y. 2005); Sarnoff v. Am. Home Prods. Corp., 666 F.Supp. 137, 138 (N.D.Ill. 1987) (applying New York law).

In Gehrhardt v. Gen. Motors Corp., 581 F.2d 7, 11 (2nd Cir. 1978), the court ruled that where the contract provided that management would be "the sole judge" of the applicable separation category this "decision could be set aside by the court only if appellant could sustain the heavy burden of establishing that the challenged benefit decision was the result of bad faith, fraud, or arbitrary action."

Plaintiff in this case has not alleged that Chase's determination regarding his termination of employment was in any way prompted by ill motive or fraud. Thus, it is plaintiff's burden to establish that the challenged decision was arbitrary. That is, absent evidence to support a finding that the classification given to plaintiff's separation as voluntary resulted from either fraud or bad faith on the part of Chase, the court must decide whether Rivera has "adduced sufficient evidence to enable a reasonable jury to conclude that the classification was arbitrary." Id. at 11.

In order "[t]o establish that the decision was arbitrary, the plaintiff must show either the absence of any rational factual basis for the decision, or that the decision was made without reference to the relevant facts and contractual provisions." Sarnoff, 666 F.Supp. at 139. "[T]he test is not whether [defendant] might have justifiably classified appellant differently but whether a rational basis existed for the classification it did make". Gehrhardt, 581 F.2d at 13.

Accordingly, plaintiff in this case is "obligated to demonstrate the absence of any rational factual basis for [Chase's] classification or that [Chase] in fact made its decision without reference to relevant facts and contractual provisions." Gehrhardt at 12.

The court's role, however, is a limited one in that it may not substitute its judgment for that of Chase.  It is not enough that the determination is perceived as incorrect or that the court would have reached a different result. "As the Second Circuit ruled almost three decades ago, 'If the decision is supported by a reasonable basis, the court may not substitute its judgment for that of the employer on the disputed factual issues.'" Onanuga, 369 F.Supp.2d at 497 (*citing* Gehrhardt, 581 F.2d at 11).

In Sarnoff, plaintiff demanded the right to exercise his stock option award which his former employer had determined was forfeited under the covenant not to compete provision previously signed by plaintiff.  According to the court, "[t]he question under New York Law is not the scope or degree of the competition, or even whether competition actually existed, but rather only whether the Committee's decision that competition existed was the result of fraud, bad faith, or arbitrary action. Although the competition between [plaintiff] and defendant was minimal, this Court cannot substitute its judgment for that of the Committee." *Id*. at 139 (internal citations omitted).

CIVIL NO. 00-1485 (RLA)                                                    **Page 10**

In <u>Gehrhardt</u>, 581 F.3d at 11, the court further noted that "[u]nder this standard it is not enough to persuade a judge or jury that the decision may have been incorrect. If the decision is supported by a reasonable basis the court may not substitute its judgment for that of the trustees (here GM's management) on the disputed factual issues... The test, therefore, is not what the court would have done under the circumstances but whether, viewing the evidence most favorably to appellant, it can be concluded that no reasonable basis existed for GM's decision." (Internal quotation marks and citation omitted).

### DISCRETION UNDER CHASE'S PLAN

The Plan provides that "[t]he Committee, in its sole discretion, will determine the terms and conditions to be included in any Award Agreement relating to stock option, which terms and conditions may include provisions restricting or terminating a Participant's right to exercise an option following termination of employment or other forfeiture provisions."[10]

Except in cases of retirement, death or job elimination,[11] the options granted by the aforementioned awards end immediately upon the employee's voluntary termination of employment.[12]

---

[10]  1996 Long-Term Incentive Plan p. 5.

[11]  The 1998 Terms and Conditions also include total disability.

[12]  The 1997 Terms and Conditions section 3(a), in pertinent part, provides:

**CIVIL NO. 00-1485 (RLA)**                                        **Page 11**

---

The Terms and Conditions for both awards further provide that it is within the discretion of the Human Resources Director to establish under which circumstances job elimination will constitute either involuntary termination allowing the grantee to retain the rights conferred under the grant or voluntary termination resulting in the forfeiture thereof.

In this regard, the 1997 Terms and Conditions Section 3(d) provides:

> Termination as a result of job elimination. If the
> employment of the Grantee involuntarily terminates... as a
> result of job elimination **as determined by the Director**
> **Human Resources in his sole discretion**, then all
> outstanding Options will become exercisable...

(Emphasis ours).

---

> As of the date that employment terminates for
> any reason, except for Retirement, Death or Job
> Elimination... the Option shall terminate
> immediately.

The 1998 Terms and Conditions section 2(a), in pertinent part, reads:

> As of the date that employment of a Grantee
> terminates for any reason except for Retirement,
> termination as a result of a job elimination,
> total Disability or death... any unvested
> Restricted Stock awarded under the Agreement
> shall be forfeited immediately.

CIVIL NO. 00-1485 (RLA)                                                    Page 12

Similarly, the 1998 Terms and Conditions Section 2(c) reads:

Termination as a result of job elimination. If the employment of the Grantee involuntarily terminates as a result of job elimination **as determined by the Director Human Resources in his sole discretion**, then any unvested shares of Restricted Stock will vest...

(Emphasis ours).

Based on the foregoing, it is evident that plaintiff's entitlement to his 1997 and 1998 awards was conditioned upon his continued employment with Chase. By way of exception, these documents allow for preservation of the rights granted thereunder in the event of involuntary termination due to job elimination. However, it is clear that the determination regarding job elimination for purposes of qualifying for this exception is vested in the Human Resources Director "in his sole discretion".

No evidence has been presented thus far in this case establishing the grounds underlying Chase's conclusion that plaintiff's rejection of employment with a third-party constituted voluntary termination in order for the court to be in a position to assess its reasonableness.[13] In other words, there are no facts currently before us to allow us to reach a determination as to

_____

[13] This does not mean that private entities must keep comprehensive records as public agencies do. The court is free to receive such evidence. Gehrhardt, 581 F.2d at 12.

CIVIL NO. 00-1485 (RLA)                                    **Page 13**

whether or not the decision at issue was indeed arbitrary and capricious.

## WAIVER

Chase further contends that, prior to his resignation, plaintiff was made aware of the consequences affecting his stock option rights should he decline an employment with BBV, therefore, knowingly forfeited any claim thereunder.

In support of this proposition, Chase points to a Q&A sheet handed out to its employees on or about April 21, 1998 which, in pertinent part, indicated:

What happens to our Value Shares employee stock options?

If you were granted Value Shares on December 17, 1996 and/or December 16, 1997 and accept a job with BBV, you will retain the right to exercise any of these stock options on the same terms and conditions as if you continued working for Chase to the end of the 10 year option term. The same conditions will apply for any employee who is not offered a comparable job with BBV. (**Employees who are offered a job with BBV but do not accept it will forfeit their rights to the  options on the date their employment with Chase ceases**). Any employee still holding Vision Shares must exercise them within 90 days of the date of the date employment with Chase ceases.

(Emphasis in original).

Although plaintiff concedes having received this information,[14] he questions Chase's interpretation of the Plan which conditioned his acceptance of employment with a third-party as grounds for its classification of his termination as voluntary, thereby resulting in forfeiture of the stock and stock option rights. Additionally, plaintiff claims that even assuming *arguendo* that Chase's construction of the Plan was correct, the employment offer with BBV was not to a "comparable" position within the meaning of the Plan because it allegedly entailed a significant cut in benefits.

"A waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it. Such waiver must be clear, unmistakable and without ambiguity." Onanguga v. Pfizer, Inc., 369 F.Supp.2d 491, 499 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). Given plaintiff's challenges to Chase's interpretation of the Plan provisions with respect to the voluntariness of his termination of employment, we

---

[14] Plaintiff attempts to argue that this provision did not apply to the stock options he held. However, plaintiff is precluded from arguing lack of notice regarding forfeiture based on his own allegations. At ¶ 13 of the Third Amended Complaint plaintiff averred that "[o]n that same April 21, 1998, Chase Bank informed its employees that those who were offered a job by the BBV but did not accept it would be regarded as having 'voluntarily resigned' and **forfeited the rights to stocks and stock options granted by Chase Corp.**" (Emphasis ours). At no time did plaintiff qualify that his advance knowledge was limited to the Value Shares and not to the stock awards claimed in the complaint.

**CIVIL NO. 00-1485 (RLA)**                                    **Page 15**

find the record lacking any support to conclude that he waived his rights to the stock and stock option grants.

### CONCLUSION

Based on the foregoing, we conclude that there is not sufficient evidence in the record at this time for us to ascertain whether or not Chase's determination regarding the voluntariness of plaintiff's departure was arbitrary or capricious. Further, we find no waiver of plaintiff's rights under  the Plan.

Accordingly, the Motion Requesting Summary Judgment of Plaintiff' Stock Option Claim filed by Chase (docket No. **83**)[15] and plaintiff's Memorandum in Opposition and in support of Plaintiff's Cross-Motion for Partial Summary Judgment (docket No. **99**)[16] are hereby **DENIED.**

IT IS SO ORDERED.

San Juan, Puerto Rico, this 27th day of October, 2006.


                                    S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                                    United States District Judge

---

[15]   *See*, Chase's Reply (docket No. **114**).

[16]   The Motion to Strike Plaintiff's Cross-Motion for Summary Judgment filed by Chase (docket No. **106**) is **DENIED.**