IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RANDOLFO RIVERA SANFELIZ,

    Plaintiff,

    v.

THE CHASE MANHATTAN BANK, et al.,

    Defendants.

CIVIL NO. 00-1485 (RLA)

**ORDER DISMISSING ERISA SEVERANCE PLAN CLAIM**

    Defendants The Chase Manhattan Bank, successor to The Chase Manhattan Bank, N.A., and The Chase Manhattan Corporation ("Chase Corp."), collectively referred to as ("Chase") have moved the court to dismiss plaintiff's claim for severance pay benefits.

    In support of their request, defendants contend that: Chase is not the proper party defendant to this claim; plaintiff failed to exhaust his administrative remedies and is not entitled to benefits under Chase's severance pay plan. Since this last ground is dispositive of the pending motion, we need not address the other two.

    The court having reviewed the memoranda and evidence submitted by the parties as well as the applicable law finds that dismissal of this particular claim is warranted.

**CIVIL NO. 00-1485 (RLA)**                                                           **Page 2**

## PROCEDURAL BACKGROUND

Plaintiff, Randolfo Rivera Sanfeliz, filed the present action against Chase alleging, *inter alios*, violation of Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B)[1] due to defendant's denial of severance benefits pursuant to Chase's Severance Pay Policy ("the Severance Plan").

Initially, Chase moved for dismissal pursuant to Rule 12(b)(6) Fed. R. Civ. P. but the request was subsequently changed to a motion for summary judgment under the provisions of Rule 56 Fed. R. Civ. P.

In the context of suits based on denial of ERISA benefits, the summary judgment mechanism will be limited to the record available to the decision-maker in making its coverage determination.

> The review utilized both by this court and the district court in this ERISA case differs in one important aspect from the review in an ordinary summary judgment case... [I]n an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue. This means the non-moving party is not

---

[1] Section 502(a)(1)(B) allows a participant to institute a suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

entitled to the usual inferences in its favor. When there is no dispute over plan interpretation, the use of summary judgment in this way is proper regardless of whether our review of the ERISA decision maker's decision is de novo or deferential.

Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005); Buffonge v. The Prudential Ins. Co. of Am., 424 F.3d 20, 28 n.10 (1st Cir. 2005).

## THE FACTS

Based on the record before us, we find that the following facts are not in dispute in this case.

1. Rivera was an employee of Chase Bank until 1998.
2. On April 21, 1998, Chase Bank informed Rivera that: it would sell its assets and operations in Puerto Rico to Banco Bilbao Vizcaya ("BBV"); the going concern would not cease operating and BBV would offer employment to some of Chase Bank's employees.
3. BBV offered Rivera employment which he declined.
4. During this time Rivera sought and obtained employment with FirstBank Puerto Rico.
5. In June 1998 Rivera left his employment with Chase Bank and tendered his resignation letter to his employer.
6. Chase Corp. was the sponsor of the Severance Plan. Chase Bank employees in Puerto Rico who met the requirements for

**CIVIL NO. 00-1485 (RLA)**                                                                    **Page 4**

eligibility included therein could be participants of the Severance Plan.

7.  The Severance Plan is an ERISA-covered plan.

## ERISA - REVIEW STANDARD

Rivera claims that he is entitled to benefits under the Severance Plan because he was allegedly involuntarily terminated due to job elimination and/or was constructively discharged[2] because he was forced to accept a job offer with BBV, a new employer, which would entail a cut in benefits and income.

Defendants, on the other hand, contend that the determination of the Plan Administrator finding plaintiff ineligible for benefits under the terms of the Severance Plan should be upheld.

ERISA does not specify the standard to be used by the courts in reviewing denial of benefits. However, the United States Supreme Court in addressing this matter has ruled that "a denial of benefits challenged under Section 502(a)(1)(B) of ERISA is to be reviewed

---

[2] In our Order Dismissing Claims under Law 80 (docket No. 47), plaintiff's argument that his resignation amounted to a constructive discharge because he was not offered equal benefits by BBV or because he did not choose BBV as his employer was rejected by the court. At that time the court noted that "[e]ven taking all of the allegations of the Complaint as true, it does not appear, and Rivera has not even alleged, that Chase engaged in unjustified acts intended to force him to abandon his position, nor has he claimed that his working conditions were so intolerable that the only reasonable alternative for him was to resign from his employment. Not being happy with an employer does not a constructive discharge make.  See generally, Greenberg v. Union Camp Corp., 48 F.3d 22, 27 (1st Cir. 1995); Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360-361 (2nd Cir. 1993); Vélez de Reilova v. R. Palmer Bros., Inc., 94 D.P.R. 175 (1967)."

**CIVIL NO. 00-1485 (RLA)**                                                                   **Page 5**

under a *de novo* standard unless the benefit plan gives the administrator, or fiduciary, discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 950, 103 L.Ed.2d 80, 95 (1989); Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 122 S.Ct. 2151, 2170, 153 L.Ed.2d 375 (2002); Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005).

The First Circuit Court of Appeals has consistently followed Firestone directing *de novo* review of benefit determinations unless the benefit plan grants discretionary authority to the administrator or fiduciary. *See*, Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 89-90 (1st Cir. 2005); Campbell v. BankBoston, N.A., 327 F.3d 1, 6-7 (1st Cir. 2003); Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 18 (1st Cir. 2003); Brigham v. Sun Life of Canada, 317 F.3d 72, 80 (1st Cir. 2003); Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998).

Thus, *de novo* review is the default standard unless the plan specifically allows for discretionary authority. Rush Prudential, 536 U.S. at 386, 122 S.Ct. at 2170, 153 L.Ed.2d at 402; Brigham, 317 F.3d at 80; Terry, 145 F.3d at 37; McLaughlin v. The Prudential Life Ins. Co. of America, 319 F.Supp.2d 115, 124 (D.Mass. 2004).

If the administrator or fiduciary is given discretion to determine eligibility of benefits or to construe the terms of the

**CIVIL NO. 00-1485 (RLA)**                                                        **Page 6**

plan the "arbitrary and capricious" standard will be applied in which case coverage decisions will be reviewed with a degree of deference to the administrator. Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 13 (1st Cir. 2003); Lopes v. Metro. Life Ins. Co., 332 F.3d 1, 4 (1st Cir. 2003); Brigham, 317 F.3d at 81. *See also*, Buffonge, 426 F.3d. 20, 28 (1st Cir. 2005) (Court "must defer to the claims administrator's benefits decision, disturbing it only if it was arbitrary, capricious, or an abuse of discretion.")(internal quotation marks and citation omitted).

Where the discretionary grant is found, "Firestone and its progeny mandate a deferential arbitrary and capricious standard of judicial review." Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997) (internal quotations omitted); Pari-Fasano v. ITT Hartford Life and Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000); Terry, 145 F.3d at 37. "[F]actual determinations under ERISA plans are examined using the abuse of discretion standard of review; federal courts owe due deference to the administrator's factual conclusions that reflect a reasonable and impartial judgment." Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 231 (5th Cir. 2004) (citation and quotation marks omitted).

"A plan administrator's decision must be upheld if there is any reasonable basis for it." Madera v. Marsh USA, Inc. , 426 F.3d 56, 64 (1st Cir. 2005). "The operative inquiry under arbitrary, capricious or abuse of discretion review is whether the aggregate evidence,

viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Wright v. R.R. Donnelley & Sons Co., 402 F.3d 67, 74 (1st Cir. 2005) (citation and internal quotation marks omitted). On arbitrary and capricious review, [the administrator's] decision will be upheld if the denial is reasonable and supported by substantial evidence." Glista v. Unum Life Ins. Co. of America, 378 F.3d 113, 126 (1st Cir. 2004). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004). "[T]he proper standard for reviewing the decision of an insurer that has such discretionary authority is the arbitrary and capricious standard, but... 'the reasonableness of the insurer's decision determines whether or not it constituted an abuse of the discretion vested in the insurer by the plan'". Dandurand v. Unum Life Ins. Co. of America, 284 F.3d 331, 335-6 (1st Cir. 2002) (citing Pari-Fasano, 230 F.3d at 418). *See also*, Lopes, 332 F.3d at 6; Cook, 320 F.3d at 19.

**THE PLAN**

We agree with defendants that the terms of the Severance Plan at issue undisputably vest upon the Plan Administrator with the discretion to interpret its terms. In this regard, Art. VI of the Severance Plan provides:

**CIVIL NO. 00-1485 (RLA)** **Page 8**

6.1 <u>Administrator</u>. The Policy shall be administered by the Administrator on behalf of all Employers. The Administrator shall have all powers necessary to administer the Policy. The Administrator or his delegates may, from time to time, establish rules for administration of the Policy and shall have sole responsibility and complete discretion to interpret all terms and provisions of the Policy and to decide any matters in connection with the Policy including, but not limited to, whether an (A) individual (i) qualifies to participate, (ii) is eligible or continues to be eligible for benefits, or (iii) has refused an offer of employment and (B) the calculation of the amount and type of benefits to which such individual is entitled hereunder.

Additionally, the Severance Plan specifically grants entire discretionary authority upon the Plan Administrator regarding eligibility when the employee has been offered alternate employment regardless of the fact that the other position is not comparable to the one currently occupied by the employee.

An Employee shall not be a Participant or eligible for benefits hereunder if the Administrator (or his or her delegates), in his/her sole discretion, determines that such Employee (i) has been offered another position or reassigned to perform other functions (whether or not such position or reassignment is accepted or comparable to the

>    current position) by any Employer, Subsidiary, affiliate,
>    any purchaser of a business unit or any other potential
>    employer with whom an Employer has made arrangements for
>    the employment of the Employee...

Severance Plan Art. III, Sec. 3.2.

Thus, according to Sec. 3.2, severance payment was authorized in instances of involuntary termination **only if** no employment offer existed either from Chase or a purchaser of its business unit.

On the other hand, employees involuntarily terminated by Chase were entitled to benefits under the Severance Plan. Involuntary terminations within the meaning of the Plan are defined in Art. III, Sec. 3.1(i) as encompassing:

>    (a)   a relocation of the Employee's place of work to a
>          location that is more than a reasonable commuting
>          distance (as determined by the Administrator in his
>          sole discretion) from such individual's existing place
>          of work; or
>    (b)   a sale or closing of all or part of the business unit
>          in which the Employee is employed; or
>    (c)   an elimination or reassignment of the job position or
>          functions held or performed by the employee.

According to the evidence submitted, on April 21, 1998 plaintiff was offered employment by BBV with the same salary and comparable work conditions. According to the written offer, the previous years

**CIVIL NO. 00-1485 (RLA)**                                                                **Page 10**

of service with Chase would be fully honored; his present base salary would be maintained, and he would receive a Christmas and a Performance Bonus. Additionally, plaintiff would be immediately eligible for the BBV Benefits Program.

On June 1, 1998 plaintiff submitted his resignation letter to Chase effective that same day.

A plain reading of the Severance Plan leads to the inescapable conclusion that employees such as plaintiff - who were offered alternate employment with BBV - were excluded from its coverage. It is evident that plaintiff's situation did not fit within the "involuntary" termination provision of the Plan even if, as he alleges, his benefits were to be reduced in the new position. Based on the terms of the Plan, the denial of severance benefits was more than reasonable and must therefore, be upheld.[3]

Plaintiff's attempts to avoid summary judgment have proven insufficient.[4]

Plaintiff contends that there was no decision made by the Plan Administrator and hence, the court is free to decide his claim under *de novo* standard. Logic dictates, however, that the fact that

---

[3] Given the uncontroverted facts at hand together with the clear Plan provisions, the result would be the same even if we were to utilize a *de novo* review approach as plaintiff suggests.

[4] We find the other arguments raised by plaintiff in his opposition do not merit discussion.

**CIVIL NO. 00-1485 (RLA)**                                          **Page 11**

severance benefits were not granted is precisely because a prior determination was made that he was not entitled to the same.

Plaintiff further argues that he was not privy to the terms of the Severance Plan and that he was never apprised that his refusal of a job offer with BBV would result in a waiver of his severance pay benefits.

In light of the imminent sale to BBV on April 21, 1998, Chase held a meeting of its employees with Human Resources representatives to address concerns regarding how the transition would affect their employment. Additional information regarding this matter was also provided by way of a document entitled "Employee Q&A" distributed to the employees.[5]

Severance pay benefits were addressed in two separate portions of the Employee Q&A as follows:

> *Q.   What will happen to the Chase employees currently employed by Chase in Puerto Rico?*
>
> A.   Some employees will be offered positions with BBV immediately. In addition, a few individuals may be invited to interview with BBV and it is expected that those selected will receive employment offers over the next few weeks. **Those individuals who are not offered employment by BBV will be eligible for Chase's**

---

[5] Plaintiff does not deny having received copy of this document. As a matter of fact, it was submitted as an attachment to plaintiff's complaint.

**CIVIL NO. 00-1485 (RLA)** **Page 12**

> **severance program as well as severance related benefits.**
>
> . . . .
>
> *Q. What is Chase's Severance policy?*
>
> A.   ... **The key idea is that Chase provides severance if your employment is terminated involuntarily and you do not have other employment options with Chase or BBV. You do not receive severance if you refuse another job with Chase, or BBV.**

(Emphasis ours).

Thus, based on the foregoing, we find the explanation provided in this document sufficient to alert plaintiff of the terms of the Plan and the consequences of declining a job offer with either Chase or BBV.

Lastly, plaintiff has no evidence to support his allegation that severance payments had been made to employees who did not accept employment with BBV. Not only were the potential witnesses to this assertion withdrawn but this contention was directly contradicted by Magaly Denis-Roman, Vice President in Employee Relations Human Resources for Chase/JP Morgan Chase as well as the records attached to her statement.[6]

---

[6] *See*, Supplemental Dispostive Motion (docket No. 94) and Motion for Leave to Replace "Exhibit 10" (docket No. 95).

**CIVIL NO. 00-1485 (RLA)**                                                                 **Page 13**

**CONCLUSION**

Based on the foregoing, Chase's Motion to Dismiss ERISA Severance Plan Claim (docket No. **48**) is **GRANTED**.[7]

Accordingly, the Second Cause of Action of the Second Amended Complaint seeking benefits under the Severance Plan is **DISMISSED**.

Partial Judgment shall be issued accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 27th day of October, 2006.

                                                    S/Raymond L. Acosta
                                                  RAYMOND L. ACOSTA
                                        United States District Judge

---

[7] *See also*, Objection to Defendants' Motion to Dismiss (docket No. **61**); Reply (docket No. **69**); Supplemental Dispositive Motion (docket No. **94**) and Motion for Leave to Replace "Exhibit 10" (docket No. **95**).